# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| STANLEY THOMAS, )<br>      Plaintiff, )<br>)<br>   v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>      Defendant. ) | CAUSE NO.: 2:11-cv-188-PRC |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Stanley Thomas on August 30, 2010, and Plaintiff's Brief in Support of Plaintiff's Complaint to Review Decision of Social Security Administration [DE 18], filed by Plaintiff on October 25, 2011. Plaintiff requests that the August 27, 2010, decision of the Administrative Law Judge to deny his disability insurance benefits be reversed or, alternatively, remanded for further proceedings. On December 5, 2011, the Commissioner filed a response, and on January 5, 2012, the Plaintiff filed a reply. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 25, 2008, Plaintiff filed an application for Supplemental Security Income, alleging a disability onset date of March 1, 2008. Plaintiff's application was denied initially and upon reconsideration.

A hearing was held on June 8, 2010, before Administrative Law Judge ("ALJ") Monica LaPolt, at which Plaintiff, his attorney, Plaintiff's witness Lois A. Thomas, and vocational expert ("VE") Constance Brown appeared. On August 27, 2010, the ALJ issued a decision denying

1

Plaintiff's application, and on April 6, 2011, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A. Background

Plaintiff was 49 years old at the time of the ALJ's decision. He was 46 years old at the date of alleged onset of disability. Plaintiff has a high school education. Prior to the onset of his impairment he worked as a welder and a laborer.

### B. Medical Evidence

Plaintiff sought treatment for a back strain in late 2007 and early 2008. On April 22, 2008, he sought emergency room treatment for "pressure like chest pain" and reported a history of surgery in 2004 to place a cardiac stent. Plaintiff was admitted to the hospital for a mitral valve repair/replacement and coronary artery bypass grafting.

On May 12, 2008, Plaintiff's cardiac surgeon, Dr. Jay Schlaifer, reported that Plaintiff was limited to a five-pound lifting limitation for at least six weeks post-operatively to allow healing and that he expected Plaintiff to return to full capacity without restrictions within 12 weeks. On May 16, 2008, Plaintiff received an echocardiogram showing resolution of Plaintiff's mitral regurgitation and moderate atrial enlargement.

On June 30, 2008, at a consultation with Dr. Schlaifer, Plaintiff complained of heart pounding with no angina and chest discomfort. There was no change on his electrocardiogram results, and Dr. Schlaifer recommended cardiac rehabilitation. Plaintiff received cardiopulmonary rehabilitation and, by August 11, 2008, was exercising at up to a 5.0 MET level without chest discomfort or shortness of breath.

On September 4, 2008, Plaintiff underwent a consultative examination with Dr. D. Pierce. Dr. Pierce noted Plaintiff's shortness of breath, and opined that Plaintiff could perform work with no limitations on standing but with lifting limitations and limitations on stressful activities. On November 14, 2008, state agency physician Dr. R. Bond reviewed the evidence and opined that Plaintiff could perform a range of medium exertion work. On December 12, 2008, Dr. M. Brill, a second state agency physician, also reviewed the evidence and affirmed this opinion.

On February 20, 2009, Dr. Schlaifer noted that Plaintiff had atypical chest pain without evidence of angina and that his valvular and artery disease were stable.

On April 24, 2009, Plaintiff sought emergency room treatment for chest pain. 24-hour holter monitoring was "unremarkable."

On June 5, 2009, Plaintiff complained of neck pain. A CT scan of Plaintiff's cervical spine was essentially unremarkable.

On June 19, 2009, Plaintiff was seen by pulmonologist Dr. Thomas Cartwright for complaints of shortness of breath. Dr. Cartwright recommended further evaluation. When it was performed on June 22, 2009, bronchoscopy was normal and pulmonary function testing showed only a mild reduction in forced vital capacity with normal lung capacity. At a follow-up visit on July 14,

3

2009, Dr. Cartwright diagnosed Plaintiff with rhinitis and advised him to stop smoking and use inhaled nasal allergy medication.

On August 21, 2009, Dr. Schlaifer reported that Plaintiff had "stable mitral valvular heart disease status post prosthetic mitral valve with ischemic cardiopathy," but that he "would not classify [Plaintiff] as disabled from his heart disease."

On September 29, 2009, Plaintiff received a functional capacity evaluation. It indicated that Plaintiff could perform work at the medium level of exertion.

On October 15, 2009, Plaintiff was evaluated for back and neck pain at a pain care clinic. Physical examination was entirely normal and Plaintiff did not complain of pain in his neck or back with range of motion testing.

**C.    Mental Health Evidence**

On December 15, 2008, state agency psychologist Kenneth Neville, Ph.D., reviewed the record and opined that Plaintiff did not have a "severe" mental impairment.

On October 14, 2009, Plaintiff received a mental health assessment. He reported feelings of anxiety and depression and was diagnosed with an unspecified depressive disorder.

On December 14, 2009, Plaintiff underwent a psychiatric evaluation with Dr. Babar Hasan. The mental status examination was unremarkable and revealed an appropriate affect, normal mood, good attention and concentration, appropriate thought content, good memory, and good judgment. Plaintiff was diagnosed with an unspecified depressive disorder and cocaine abuse, and a GAF of 48.

On April 12, 2010, Plaintiff was seen for a medication review regarding his depression. He reported excitement about his daily activities, including fishing and a part-time job. The efficacy of his medications and his compliance with them were both considered "fair."

**D.     Plaintiff's Testimony**

At the administrative hearing on June 8, 2010, Plaintiff testified that he last worked in 2004, before being incarcerated on drug related charges. He stated that he could not perform the work he used to do because of a heart attack in 2008. Plaintiff also reported shortness of breath, dizziness, fatigue, and numbness on his left side. He estimated that he could occasionally lift up to 25 pounds, stand for five minutes at a time, and sit without limitation other than "seeing stars." He indicated that he has been treated for depression and has mood swings and problems with anger.

**E.     Lois A. Thomas' Testimony**

At the administrative hearing, Plaintiff's wife, Lois A. Thomas, testified that Plaintiff is unable to stand up for more than 15-20 minutes at a time, complains of dizziness, and sleeps a lot.

**F.     Vocational Expert Testimony**

Vocational expert Constance Brown also testified at the hearing. The ALJ asked whether she could identify any jobs that could be performed by an individual with Plaintiff's vocational profile who was limited to unskilled light work that: required no more than occasional postural movements; required occasional stair climbing and no climbing of ladders, scaffolds, or ropes; and did not require work around hazards or unprotected heights. The VE testified that such an individual could perform at least 30,000 jobs in Indiana. The ALJ also asked the VE whether she could identify any jobs with the same limitations but where the individual was further limited to only occasional pushing or pulling with his left arm and only incidental interaction with others. The VE testified that

such an individual could perform 38,000 light exertion jobs and at least 1,200 sedentary jobs in Indiana.

**G.     The ALJ's Decision**

On August 27, 2010, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of March 25, 2008, and that he suffered from "severe" physical and mental impairments but none that met or medically equaled the requirements of a listed impairment. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work activity that: required no more than occasional postural movements; required only occasional stair and ramp climbing and no climbing of ladders, ropes, or scaffolds; required only occasional pushing or pulling with the left arm; did not involve work around hazards or unprotected heights; and required only incidental interaction with others. Considering Plaintiff's RFC and the testimony of a vocational expert, the ALJ found that Plaintiff could perform a significant number of jobs despite his functional limitations. The ALJ therefore concluded that Plaintiff was not disabled and not entitled to SSI.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v.*

*Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to h[er] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*,

362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no,

then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ: (1) made improper listing determinations during step three of her analysis; (2) improperly failed to summon medical advisors to testify as to whether Plaintiff's impairments rendered him totally disabled; (3) made an erroneous credibility determination; and (4) failed to make a proper RFC finding. The Commissioner argues that the ALJ's decision was appropriate and supported by substantial evidence. The Court will consider each of Plaintiff's arguments in turn.

**A.      Step Three Determination**

Plaintiff first argues that the ALJ committed error by finding that Plaintiff's conditions do not meet or equal Listings 4.02, 4.04, 1.04, and 12.04. However, Plaintiff only advances an argument as to Listing 1.04.

9

"[A] claimant is eligible for benefits if []he has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P., App. 1). In reaching her conclusion regarding "whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Id*. (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *Scott*, 297 F.3d at 595-96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). A claimant bears the burden of showing that his impairments meet a listing and that his impairments satisfy all of the various criteria specified in the listing; however, the ALJ also "should mention the specific listings [s]he is considering and h[er] failure to do so, if combined with a 'perfunctory analysis,' may require remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (quoting *Barnett*, 381 F3d at 668) (other citations omitted).

1. <u>Cervical Disk Degeneration</u>

The ALJ determined that a finding of cervical disk degeneration was not established in the record. Plaintiff argues that the ALJ ignored medical evidence and erroneously concluded that Plaintiff's condition was barely severe. The Commissioner argues that the ALJ explained in sufficient detail why the record did not support a finding that Plaintiff met or equaled the requirements under Listing 1.04.

In her findings at step two of her analysis, the ALJ explained that although cervical disk disease had not been established by medical evidence, she gave Plaintiff the benefit of the doubt regarding his reports of back pain and included cervical disk disease as one of Plaintiff's severe impairments. At step three, the ALJ explained that the cervical disk degeneration did not meet or

medically equal the criteria in Listing 1.04. In order to meet the requirements of Listing 1.04(A), a plaintiff must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2011).

Plaintiff argues that the ALJ ignored medical evidence that establishes Plaintiff's cervical disk disease impairment. Although the diagnoses he describes provide an indication of nerve root compression, Plaintiff fails to identify any evidence in the record indicating that he suffers any of the other symptoms required by the Listing, such as limitation of motion of the spine or motor loss accompanied by sensory or reflex loss. Therefore, Plaintiff has failed to show that "his impairments meet a listing and that his impairments satisfy all of the various criteria specified in the listing," and therefore the ALJ's decision on this point will not be reversed or remanded. *Ribaudo*, 458 F.3d at 583 (citation omitted).

2.  Plaintiff's Heart Condition

Plaintiff next argues that the ALJ made an improper determination at step two of her analysis by finding that Plaintiff's heart condition was not severe; however, as with the cervical disk disease, the ALJ did conclude that Plaintiff's heart condition was a severe impairment. Plaintiff also claims that the ALJ improperly lumped multiple conditions under the term "heart condition," but fails to raise any cogent argument or provide any information about what medical problems he is alleging were impermissibly dismissed as "heart conditions." Accordingly, the ALJ's decision regarding Plaintiff's heart condition will not be reversed or remanded.

### 3. Plaintiff's Depression

In one of the sub-headings in Plaintiff's brief, he states that the ALJ made an improper determination as to Listing 12.04, which pertains to mental health. However, in the section of the brief that addresses the issue of Plaintiff's mental health, he does not argue that he meets or equals the listing for 12.04, nor does he argue that the ALJ erred by not finding that Plaintiff meets the requirements of this listing. Instead, Plaintiff makes a perfunctory argument that the ALJ ignored and mischaracterized evidence of Plaintiff's depression before concluding that his depression is not severe. The Commissioner argues that the ALJ properly considered Listing 12.04 before finding that Plaintiff's depression was severe and explained this finding in sufficient detail.

In her opinion, the ALJ found that Plaintiff suffers from the severe impairment of depression. Accordingly, to the extent Plaintiff is arguing that the ALJ erred in finding Plaintiff's depression was not severe, the argument is moot.

Plaintiff also argues that his GAF score of 48 proves that he has disabling depression. However, a GAF score alone is not determinative of disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed.Appx. 775, 780 (7th Cir. 2003)). Because the ALJ described how she reached her conclusion regarding Plaintiff's depression, including her consideration of medical expert opinions, the ALJ's decision on this point will not be reversed or remanded.

**B. Failure to Summon Medical Advisor**

Plaintiff argues that the ALJ erred in failing to summon a medical advisor to testify as to whether or not Plaintiff was disabled from his impairments. The Commissioner argues that the ALJ

properly considered three state agency medical experts who reviewed the evidence in the record and determined that Plaintiff was not disabled by his impairments.

Plaintiff states, with no argument other than a citation to *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000), that "the [ALJ's] denial decision must be reversed because the ALJ failed to summon a medical advisor to provide an informed basis for determining whether the claimant was disabled from his impairments (individually or combined)." Pl. Br. at 19. However, *Green v. Apfel* was a case in which "no medical expert testified," and the ALJ "played doctor" by interpreting the medical evidence on his own. 204 F.3d at 781. In this case, the ALJ relied on a record containing the reports of two state agency physicians opining that Plaintiff had the capacity for medium work at a light level of exertion. An ALJ may rely on the opinion of state agency experts, *Scheck,* 357 F.3d at 700, and Plaintiff does not indicate that there was any inconsistency or lack of medical foundation for these reports. There was no need for the ALJ to summon another medical advisor and the ALJ's decision will not be reversed or remanded on this point.

**C.      Credibility Determination**

Plaintiff contends that the ALJ's credibility finding was improper because it ignored evidence of the reasons behind his noncompliance with prescribed medication and ignored or only selectively considered evidence corroborating Plaintiff's allegations. The Commissioner argues that Plaintiff provides no factual or legal support for his arguments, and that the ALJ's credibility analysis was sufficiently detailed.

Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a).

13

However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96–7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely

because they are not substantiated by objective evidence." SSR 96–7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Plaintiff argues that the ALJ failed to make accurate findings with regard to the seven factors contained in Social Security Ruling 96–7p. However, Plaintiff fails to point to any specific flaws or defects in the ALJ's decision beyond a general argument that the ALJ improperly discredited Plaintiff because of his occasional medical noncompliance and ignored evidence in the record discussing his noncompliance. All the evidence Plaintiff cites in support of this argument pertains to a different case and record than the case currently before the Court. Without any evidence or argument indicating that the ALJ's credibility determination was patently wrong, the Court will not disturb the ALJ's credibility determination as to this issue.

Plaintiff also argues that the ALJ unfairly discredited Plaintiff's testimony as to his knee pain by "taking statements out of context and misapplying evidence." Pl. Br. at 18. Plaintiff fails, however, to explain what the proper context for the statements would be or how evidence was misapplied. Although he makes a blanket assertion that the ALJ ignored or selectively considered evidence, Plaintiff fails to point to any specific instances where that occurred.

Finally, Plaintiff argues that "the ALJ did not articulate any legitimate reason for his credibility decision." Pl. Br. at 21. However, the ALJ considered numerous factors in assessing Plaintiff's credibility, including Plaintiff's good response to cardiac treatment; the improvement in Plaintiff's blood pressure and cardiac symptoms; the physical examination findings after Plaintiff's surgery; the physician opinions in the record; the results of the functional capacity evaluation;

15

Plaintiff's subjective statements about his difficulty using his left arm and factors that exacerbated his chest pain; and the Plaintiff's mental status examinations. Because Plaintiff fails to specifically address any problems with the ALJ's credibility determinations, this Court cannot say that the credibility determination was "patently wrong," and it will not be disturbed. *Prochaska*, 454 F.3d at 738.

## D. Residual Functional Capacity Assessment

Plaintiff argues that the ALJ's RFC finding was improper because it ignored or rejected evidence of Plaintiff's pain and depression. The Commissioner argues that the ALJ's RFC finding is supported by substantial evidence.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n. 2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96–8p, 1996 WL 374184 (Jul. 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at a RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96–8p at *5. In addition, she "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe' "because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id*. Although the ALJ need not discuss all the evidence, she must consider all the evidence that is

relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96–8p. "SSR 96–8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment." *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006).

Plaintiff argues that the ALJ's RFC finding was improper because it ignored or rejected evidence of Plaintiff's pain and depression. Plaintiff further argues that his "statements concerning pain and other nonexertional impairments were corroborated by his physicians." Pl.'s Br. at 23. However, the ALJ specifically addressed both Plaintiff's chest pain and his depression, noting the opinions of several doctors regarding his cardiac condition, hypertension, and chest and back pain, as well as thoroughly addressing the reports of Plaintiff's depression. Plaintiff does not nhidentify any medical report or opinion in the record indicating that Plaintiff's abilities are more limited than the ALJ's RFC determination. Therefore, because the ALJ built an "accurate and logical bridge from the evidence to his conclusion," the ALJ's RFC determination will not be disturbed. " *Young*, 362 F.3d at 1002.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief requested in Plaintiff's Brief in Support of Plaintiff's Complaint to Review Decision of Social Security Administration [DE 18].

SO ORDERED this 12th day of June, 2012.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record